AUTOMOBILE GASOLINE COMPANY, Appellant, v. CITY OF ST. LOUIS and OLIVER G. CHAPMAN as License Collector.—32 S. W. (2d) 281.

Division Two, October 13, 1930.

*Bryan, Williams, Cave & McPheeters* for appellant.

*Julius T. Muench, Oliver Senti* and *Charles L. Waugh* for respondents.

440

COOLEY, C.—Plaintiff sued in the Circuit Court of the City of St. Louis to recover money paid, under protest as is alleged, to defendant collector as gasoline merchant's license taxes. Defendants demurred to the petition on the ground that no cause of action was stated, which demurrer was by the court sustained. Plaintiff declined to plead further; whereupon judgment went for defendants, and plaintiff appealed. The question presented on this appeal is whether or not the city ordinance pursuant to which the license tax was demanded and paid is valid. If it is valid the demurrer was rightly sustained. Otherwise, not.

Plaintiff's petition is in twelve counts, praying for a total recovery of $72,769.37, alleged to have been paid by plaintiff during the years 1922 to 1925 inclusive. It sets forth the various provisions of the charter of the city of St. Louis pertaining to license taxes, an ordinance levying an *ad valorem* tax on merchants' stocks of merchandise and levying on merchants generally a tax of one dollar on each thousand dollars of sales. It then pleads the ordinance under which the taxes in question were paid and the validity of which is assailed, being Ordinance No. 30423, which requires all persons, firms and corporations engaged in the business of selling gasoline and transporting the same in barrels, tank wagons, etc., to obtain a license and re-

quires payment of a license tax of one-half cent per gallon for all gasoline sold by such persons, firms and corporations and provides in detail for collection thereof. It then challenges the validity of the gasoline tax ordinance (No. 30423) on several grounds which, with such further reference to other allegations of the petition as may be necessary, can best be stated in connection with the consideration of the respective points raised. It may be stated here that no point is made as to the sufficiency of the petition to charge that the payment of the money sought to be recovered was made under duress and protest.

I. Appellant's first and seventh points may be considered together. They are (a) that the charter of the city of St. Louis authorizes the imposition of but one tax on a merchant and that the city having by general ordinance imposed upon merchants a license or sales tax of one dollar per thousand dollars of sales it thereby exhausted its charter powers and could not levy the tax in question, which it is insisted is an "additional" tax; and (b) that the levying of both of said taxes amounts to double taxation and violates the constitutional provisions relative to uniformity of taxation.

It is apparent upon its face that Ordinance No. 30423 is not merely a regulatory ordinance referable to the police power but is a revenue measure dependent for validity upon the taxing power of the city. We do not understand respondents to contend otherwise. Nor do we understand appellant on this point to contend that the city could not lawfully levy a tax in the nature of a license or occupation tax in addition to the *ad valorem* tax levied upon the stock of merchandise carried by a merchant. It could not be successfully so contended. The former are not generally regarded as property taxes, but rather as taxes upon the business or upon the privilege of doing business. [1 Cooley on Taxation (4 Ed.), sec. 269; Ibid, vol. 1, secs. 45, 46; Ibid, vol. 4, sec. 1676; Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700; Bowman v. Continental Oil Co., 256 U. S. 642, 65 L. Ed. 1139; 17 R. C. L. p. 474.] As we understand appellant, it complains of the alleged levying of two license taxes.

Appellant refers to two provisions of the charter: Clause 24 of Article 1, Section 1, providing that the city shall have power "to impose *a* license tax upon any business, vocation, pursuit, calling, animal or thing;" and Section 2 of Article 25, by which the city is authorized, among other things, to levy *a* tax upon sales made by manufacturers and merchants. (Italics ours.) The argument based upon these charter provisions is that under either or both only one license tax is authorized; that a person who buys and sells gasoline is a merchant, therefore subject to the general ordinance levying

the sales tax of one dollar per thousand dollars of sales; that when the city enacted that ordinance it exhausted its charter power and that the enactment of Ordinance No. 30423 was an unauthorized attempt "to impose a second license tax upon a merchant of gasoline who was already required to pay a general merchant's license tax as a merchant."

The general ordinance provisions defining merchants and providing for their licensing and taxation are Sections 407-411 inclusive, of Article XIII, Chapter XVIII of the Revised Code of Ordinances of 1914. Section 407 reads as follows:

"Whoever shall deal in the selling of any goods, wares or merchandise at any store, stand or place occupied for that purpose within the city, or at the merchants' exchange, is hereby declared to be a merchant, *except as is or may be otherwise provided by ordinance.*" (Italics ours.)

Section 408 requires every person "defined to be a merchant by the preceding section," to procure from the license collector a license, which by Section 409 is non-transferable. Section 410 requires every person so defined to be a merchant to furnish to the license collector at a certain time each year a statement of the largest amount of goods on hand between the first Monday in March and the first Monday in June, and of the aggregate amount of sales made during the year next preceding the first Monday in June. Section 411 levies an *ad valorem* tax of one-fifth of one per cent upon the merchandise and in addition the license tax of one dollar per thousand dollars of sales, which for brevity we will call the one-dollar tax. It will be noted that the one-dollar tax applies to merchants as defined in Section 407, which section contains the proviso: "except as is or may be otherwise provided by ordinance."

Ordinance No. 30423 is a later ordinance enacted in 1919, and in our opinion provides otherwise as to persons within its purview. It deals with a special subject, viz., the sale and transportation of gasoline, or it might be said, with persons engaged in that business. We think it was not intended and should not be construed as levying the tax of one-half cent per gallon on sales of gasoline *in addition* to the one-dollar tax levied by Section 411 supra, but that, on the contrary, it was intended to supersede the license tax provisions of Section 411 as to persons coming within the operation of the later ordinance. It is claimed by respondents and in effect conceded in appellant's brief that such has been since its enactment the construction given Ordinance 30423 by the city authorities charged with the duty of enforcing it. Appellant pleads in the petition that by said Section 411 "it is required to pay" the one-dollar tax, but that is appellant's conclusion. It does not allege that it has paid said one-dollar tax, nor that same has been demanded of it. Contra, it tacitly

admits here that it tendered such payment, which was refused, the city authorities claiming that appellant should pay under and only under Ordinance 30423. Respondents say that we should take judicial notice of the record of a former proceeding in this court in which the parties hereto were likewise adversary parties, and wherein it is said to appear that appellant herein offered to pay the one-dollar tax and that same was refused for the reason above stated. It is unnecessary to consider whether or not we should do that since the petition herein does not plead facts showing that appellant has paid or been called upon to pay the one-dollar tax.

Ordinance No. 30423 does not in terms purport to repeal the license-tax provision of the general ordinance above referred to, but neither does it contain any language indicating that the one-half cent per gallon tax is intended to be additional to the license tax levied by the general ordinance. We think, considering all of its provisions, it indicates a contrary intent. It requires payment of the tax quarterly and at times other than that provided in the general ordinance, requires a separate license, makes different provisions for collection, provides different penalties for violation and is complete in itself without reference to the general ordinance. It is at least reasonably susceptible of the construction put upon it by the city officials charged with the duty of enforcing it as above indicated, viz., that it was intended to supersede the license tax provisions of the general ordinance. The construction of a statute by those charged with the duty of enforcing it, when it has long prevailed, while not binding upon the courts, is entitled to weight where the meaning of the statute is uncertain. [State ex rel. White v. Fendorff, 317 Mo. 579, 296 S. W. 787; Westerman v. Supreme Lodge, 196 Mo. 670, 708-9, 94 S. W. 470, and cases cited; 25 R. C. L. p. 1043; 36 Cyc. 1140-1141.] While we are not prepared to say that the construction of this ordinance by the city officials has prevailed long enough to make the rule above-mentioned strictly applicable, we think it may be noticed in connection with other considerations.

It is also the rule, as contended by respondents, that where a statute or ordinance is susceptible of two constructions, one of which makes it valid and the other invalid, the construction which sustains its validity will be adopted.

"The courts will not give a statute construction which would render it unconstitutional, absurd, or unreasonable, when it is susceptible of a constitutional or reasonable one; nor a construction which will make it an instrument by which to work an injustice." [Bassen v. Monckton, 308 Mo. 641, 649, 274 S. W. 404.]

Double taxation is not favored and an intent to levy it should not be presumed. [See State ex rel. v. Louisiana & Mo. R. R. Co. et al.,

196 Mo. 523, 94 S. W. 279.] That case dealt with property tax but we think the principle is applicable generally.

The gasoline tax ordinance is special, dealing with a particular class of merchants and is later than the general ordinance and inconsistent with the license tax provisions of the latter and therefore creates an exception to the general ordinance in that respect. "Where there are two statutes and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that if standing alone it would include the same matter, and thus conflict with each other, then the former act must be taken as constituting an exception, if not a repeal of the latter or general statute, and especially is this true where the special statute was enacted subsequent to the passage of the general." [Gilkeson v. Mo. Pac. Ry. Co., 222 Mo. 173, 204, 121 S. W. 138, and see cases cited.] The rules governing in the construction of statutes apply generally in construing ordinances. [St. Louis v. Murta, 283 Mo. 77, 222 S. W. 430; Stack v. General Baking Co., 283 Mo. 396, 410, 223 S. W. 89.]

We are not impressed with the argument that the city, by enacting the general ordinance which levied a license tax on merchants, exhausted its power to legislate on that subject. The legislative power is a continuing one, absent constitutional restriction (or perhaps in case of a city, statutory prohibition). [Morrow v. Kansas City, 186 Mo. 675, 685, 85 S. W. 572.] No reason is suggested and we perceive none why the Board of Aldermen might not enact further or different legislation on the subject.

We hold that Ordinance No. 30423 was not intended to and does not require payment of the license tax therein specified in addition to the sales tax provided in the general ordinance, thus requiring payment of a double license tax, but that it supersedes and constitutes an exception to the general ordinance in so far as the license tax provision of the latter would otherwise apply to persons coming within the provisions of Ordinance No. 30423.

II. It is earnestly contended that Ordinance No. 30423 is invalid for other reasons, which may be grouped and treated together, thus: that under Section 8702, Revised Statutes 1919, the city is without power to tax any occupation not named as taxable in its charter; that Clause 24 of Section 1 of Article I of the charter (above quoted) is void under said Section 8702 of the statute; that Article XX of the charter enumerating the businesses that may be taxed does not mention gasoline merchants, but names "merchants" and "all divisions or subclasses thereof which the framers of the charter desired to include;" that the charter does not authorize the division of merchants into classes for the purpose of taxation;

and that the city is prohibited by Section 8702 supra from so dividing them. Section 8702, supra, reads as follows:

"No municipal corporation in this State shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute."

This court en banc, in the recent case of Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 415, has held that said section applies to all cities in the State, and that a charter provision giving a municipality general blanket authority to tax all occupations (without naming them) contravenes the policy of the State as evidenced by said statute. In view of the statute and the above-mentioned decision it is apparent that Clause 24 of Section 1, Article I, of the St. Louis Charter is too general and all embracing to constitute a delegation of power to levy the tax in question, and authority therefor must be sought elsewhere.

It is not questioned that the Legislature may delegate to municipalities authority to levy license taxes and that the city of St. Louis may levy such tax upon any business or occupation named as so taxable in its charter, which provides (Art. XIX) that "license taxes may be imposed by ordinance upon merchants, commission merchants, manufacturers, professions . . ." enumerating numerous callings. Vendors of gasoline are not specifically named. It is conceded, however, that one engaged in buying and selling gasoline is a merchant. The specific question here involved is therefore whether or not the city, having unquestioned power to impose a license tax upon merchants, may in exercising that power divide or classify merchants into different classes for the purpose of such taxation. Appellant says that the framers of the charter specifically made in that instrument all the classifications they intended should be made, hence the legislative body of the city is powerless to subdivide or to make other or further classification. Respondents, contra. We agree with respondents for reasons presently to be noted.

The question above indicated was considered by this court en banc in Viquesney v. Kansas City, supra, in which the validity of a gasoline tax ordinance of Kansas City similar to the one here in controversy was assailed on several grounds, among them being the one above mentioned, viz., that gasoline merchants were not specifically named in the charter as taxable, wherefore they could be taxed only "in a class comprehending all the other merchants not specifically mentioned as taxable in classes by themselves" in the charter. Section 8702 supra, was invoked. Answering that contention and holding the ordinance valid, the court in the original opinion said:

"The requirement of Section 8702 is sufficiently met by the term 'merchant.' Evidently it was the understanding of the framers of

the charter that 'merchants' should cover all dealers that might be included in the term, because the specific dealers mentioned in that section do not include retail merchants of many kinds.''

In overruling a motion for rehearing, the court further pointed out, however, that the Kansas City charter gave express authority to divide the various enumerated occupations, etc., into different classes, but did not say whether or not such power to classify would exist absent a provision to that effect in the charter. The case therefore can hardly be said to be decisive of that particular point, but it does decide that the charter may confer such power without violating Section 8702.

The St. Louis charter contains provisions which in our opinion were designed and are sufficient to empower the legislative body of that city to make reasonable classifications in the enumerated subjects of license taxation. Section 1 of Article I declares that it shall have power:

(1) To assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation;

· (2) To adopt such classifications of the subjects and objects of taxation as may not be contrary to law;

(24) To impose a license tax · upon any business, vocation, etc., (hereinabove quoted).

Section 2 of Article I reads as follows:

''Sec. 2. *Rule of construction.*—The enumeration of particular powers in this charter is not exclusive of others, *nor restrictive of general words or phrases granting powers,* nor shall a grant or failure to grant power in this article impair a power granted in any other part of this charter; and whether powers, objects, or purposes are expressed conjunctively or disjunctively they shall be construed so as to permit the city to exercise freely any one or more such powers as to any one or more such objects for any one or more such purposes.'' (Italics ours.)

Article XX, as above stated, provides that license taxes may be imposed upon numerous specifically mentioned businesses, occupations and things, including merchants, and concludes thus:

''The foregoing enumeration shall not be taken to affect or impair the general power of the city to impose license taxes upon any business, vocation, pursuit, or calling, *or any class or classes thereof now or hereafter not prohibited by law.''* (Italics ours.)

Clause 2 of section 1, Article I, authorizes classification of the ''subjects and objects of taxation.'' The subjects and objects of taxation include persons and occupations that are or may be subject to a license tax. [1 Cooley on Taxation (4 Ed.) sec. 125.] And see State v. Irvin, 126 N. C. 989, 35 S. W. 430, holding that charter authority ''to levy and collect taxes on all persons and subjects of taxation'' includes power to levy an occupation tax on dealers in tobacco.

Appellant insists that said clause 2 should be construed as applying only to property taxation, because it immediately follows Clause 1, therefore obviously refers to the subjects and objects of taxation referred to in Clause 1, which appellant contends was intended to include only real and personal property. The language used in Clause 1 is not restricted to real and personal property. It says "all subjects or objects of taxation," which, as above stated, includes persons and occupations subject to license taxes. We think it apparent from other provisions of the charter as well as from the wording of clauses 1 and 2 that said clauses were intended to mean just what they said. Note the rule of construction provided by the framers of the charter in Section 2 of Article I above quoted, and the concluding paragraph of Article XX above quoted, wherein, after enumerating occupations and things upon which license taxes may be imposed, it is declared that such enumeration shall not impair the general power of the city to impose such taxes upon any business, etc., or any *class or classes* thereof now *or hereafter* not prohibited by law. In enacting that provision and in referring to "classes thereof now or hereafter not prohibited by law," the framers of the charter must have had in mind the power to classify the subjects and objects of taxation conferred by Clause 2 of Section 1, supra. It is probably true, as suggested by appellant, that the framers of the charter thought, from some decisions prior to the adoption of the present charter, that they could give and were giving to the city power to tax any business by the use of general language such as was used in Clauses 1 and 24 of Section 1. It was evidently their purpose so to do. And while as held in the Siemens case such purpose could not be thus effectuated because of Section 8702 of the statute, the fact that the framers of the charter evidently so intended may be considered, if necessary in arriving at the intent and purpose of Clause 2 which gives the power to classify the subjects and objects of taxation.

It is said in St. Louis v. Herthel, 88 Mo. 128, that in construing a charter "we are to construe it according to the intent of the framers, and that intent must be gathered from the language and object of the charter provisions, and giving that language an interpretation neither strict nor strained." See also Ruschenberg v. Southern Electric Railroad Co., 161 Mo. 70, l. c. 84, 61 S. W. 626; Westerman v. Supreme Lodge, supra, 196 Mo. l. c. 708; City of St. Louis v. Baskowitz, 273 Mo. 543, l. c. 556 et seq., 201 S. W. 870.

In support of its contention that the city of St. Louis has no power to divide and classify merchants for the purpose of license taxation and cannot tax gasoline merchants as a separate class because they are not so named as taxable in the charter, appellant relies chiefly upon Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286, decided by Division Two of this court. In the Grush case the city charter under consideration authorized the city to license, tax and regulate "mer-

chants.'' The city by ordinance undertook to levy a license tax upon produce dealers who were not named *eo nomine* in the charter as taxable. The court cited the statute, now Section 8702, and after referring to earlier decisions in which ordinances had been held invalid because making arbitrary and discriminatory classifications, said:

''Keeping in view then that the city has no power to impose a license tax on any business not specifically named and that the right to tax defendant's business is solely because he is a merchant it follows that the people in the freeholders' charter have placed all merchants in one class for the purpose of an occupation tax, and it is essential that it be uniform, and equal, but the common council, in this ordinance, has clearly discriminated by taxing this merchant who deals in produce and exempting those who deal in dry goods or groceries alone.

''The inequality of the exaction arises as readily in this case by arbitrary classification as it did in the Spiegel case by levying different amounts on the same class.

''No power was conferred upon the city to re-classify merchants and tax one sub-class and exempt another.''

While the opinion in the Grush case states that the charter there considered placed all merchants in one class for the purpose of an occupation tax and held that the city could not sub-divide such ''legal class,'' the court does not expressly say that power to sub-divide or classify could not be conferred upon the city by its charter. In saying that ''no power was conferred upon the city to re-classify merchants,'' the court may have meant that the charter did not purport to confer the power rather than that the power could not be so conferred. Such was evidently the interpretation of the Grush case in Ex Parte Asotsky, 5 S. W. (2d) 22, wherein an ordinance of Kansas City imposing a license tax on sales of cigarettes was assailed as invalid on the grounds here urged that it violated Section 8702 and was an unwarranted division of merchants into different classes, and wherein this court en banc, speaking through BLAIR, J., said:

''Petitioner relies on Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286. It was there held that the city had no power to license *eo nomine* a produce dealer engaged in the business of buying and selling potatoes, apples, etc. The city only had power to license, etc., merchants as a class. Respondents have pointed out that the charter in force when that ordinance was passed did not authorize the city to divide the occupations, businesses, etc., into different classes, and hence the Grush case is not controlling.''

The court also discussed Section 8702 and the provisions of the Kansas City charter, in the Asotsky case, citing and following Viquesney v. Kansas City, supra, and held that under the provision of the then charter of Kansas City the city had authority to divide merchants into different classes.

In City of St. Charles ex rel. v. Schulte, 305 Mo. 124, 264 S. W. 654, Division One of this court, speaking through RAGLAND, J., held that under a general charter power to levy and collect a license tax on vendors of soft drinks the city could in its discretion divide them upon any reasonable basis into classes, as for example, the volume of business done (City of Aurora v. McGannon, 138 Mo. 38, 39 S. W. 469), or the specific character of drinks sold (In re Watson, 17 S. D. 486, 2 Am. & Eng. Ann. Cas. 321), and fix a different tax for each class, or ''under well settled principles'' could tax one class and not another. There was no express authority given by the charter to divide into different classes the subjects of taxation therein named.

Appellant concedes that there is no difference between the facts in the Grush case and those of the St. Charles case so far as concerns the power of a city to divide a general class named as taxable into ''subclasses'' and tax them differently, but argues that in the St. Charles case the court considered only the constitutional requirement of uniformity (Sec. 3, Art. X) without noticing Section 8702, while in the Grush case both the Constitution and the statutes were considered. The appellant in the St. Charles case cited the Grush case in his brief and it is also cited in the opinion. It is not at all likely that the learned and careful judge who wrote the opinion in the St. Charles case failed to note the discussion of the statute and the interpretation given it in the Grush case. In any event the reasoning and the conclusion reached in the St. Charles case clearly sustains the view that authority given to a city by its charter to classify enumerated subjects of taxation does not violate either the constitutional or statutory provisions above referred to. And in our judgment the logic and necessity of the matter require that much liberality in the construction of the statute and of charter provisions. City charters, especially when adopted and amendable only by vote of the people, are designed to have permanency and cannot descend too much in detail. An occupation or subject of taxation named in a charter may embrace widely different conditions. ''Merchants,'' for example, is a comprehensive term. The proprietor of a department store and the owner of a peanut stand are both merchants. Many different kinds of things are dealt in by merchants. Manifestly to secure justice and equality of burden classification of some sort may be or may become necessary and if statutory and charter provisions are fairly susceptible thereof they should be given such constructions as will permit reasonable classification of the subjects named as taxable in the charter. It is not claimed that the ordinance in this case is void as being an unreasonable or arbitrary classification.

We have not overlooked other cases cited by appellant in which authority to levy the tax complained of was denied on the ground that the business or thing sought to be taxed was not named in the city charter, but in view of the fact that the charter in this case

450

names merchants and of our holding that the city may classify merchants, those cases are inapplicable. Some constitutional questions are suggested but none that are not fully answered adversely to appellant in Viquesney v. Kansas City and St. Charles v. Schulte, supra.

We hold that the ordinance under which the tax in question was paid is valid and the judgment of the circuit court is therefore affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.